IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 22-1875 T
(Senior Judge Marian Blank Horn)

CECIL BELL,

                           Plaintiff,

v.

UNITED STATES OF AMERICA,

                           Defendant.

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims and the Court's Order (ECF 13), dated April 27, 2023, defendant herewith submits this cross-motion for summary judgment and response to plaintiff's motion for summary judgment (ECF 15). For the suit year 2018, plaintiff, a nonresident alien, is not entitled to the claimed $4,150 personal exemption deduction. The Court should therefore deny plaintiff's motion, grant defendant's cross-motion, and enter judgment in favor of the United States.

## QUESTION PRESENTED

The question presented is whether plaintiff, a "nonresident alien," as defined by § 7701(b)(1)(B),[1] is entitled to a personal exemption deduction under § 151, of any amount greater than zero for tax year 2018.

## BACKGROUND

In 2018, plaintiff, a citizen of Jamaica, was a nonresident alien. (ECF 15 at 7.) Plaintiff filed his 2018 Federal income tax return (Form 1040NR-EZ) in April 2019, reporting $8,647 of income and $863 of tax, and claiming no deductions. (*Id.* at 8.) During 2018, $866 of tax had been withheld from his pay, so the Internal Revenue Service (IRS) issued plaintiff a $3 refund. (*Ibid*.)

On or about December 12, 2019, plaintiff mailed the IRS an amended tax return for 2018, on which he claimed a $4,150 personal exemption deduction and a $415 refund. (*Ibid*.) The IRS did not issue plaintiff his requested refund. (*Ibid*.) More than six months after filing his amended return, *see* § 6532(a)(1), plaintiff timely filed suit in this Court on December 20, 2022.

## ARGUMENT

**I.  Legal Framework Before the 2017 Tax Cuts and Jobs Act**

For citizens and resident aliens, the United States generally considers all income "from whatever source derived" to be taxable. §§ 1, 61. The same is generally true for nonresident alien taxpayers, although the types of income the United States considers taxable is more limited. § 871. One of the categories of income that the United States taxes is income that is effectively connected with the conduct of a U.S. trade or business. § 871(b)(1). The United States

---

[1] Unless otherwise specified, references to "section" or "§" are to provisions of the Internal Revenue Code of 1986, as amended (26 U.S.C.), and all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Regs.).

considers nonresident aliens who perform personal services in the United States, such as plaintiff, to be engaged in a U.S. trade or business and taxes them accordingly. *See* § 864(b).

Although the Code allows certain deductions from gross income, taxpayers are not allowed a deduction unless it is specifically provided for in the Code; and "the burden of clearly showing the right to the claimed deduction is on the taxpayer." *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992) (quoting *Interstate Transit Lines v. Commissioner*, 319 U.S. 590, 593 (1943)). Before enactment of the Tax Cuts and Jobs Act of 2017 (TCJA), Pub. L. No. 115–97, 131 Stat. 2054, the personal exemption deduction, provided by § 151(a), was a longstanding feature of the Code. Broadly speaking, this deduction allowed taxpayers to reduce their tax liability in an amount proportionate to their family size. In 2017, for example, married taxpayers filing jointly could take a personal exemption deduction of $4,050 for each spouse and each dependent. § 151(b), (c).

But Code § 873(a) has always limited the types of deductions (including the personal exemption deduction) that nonresident aliens can take against their gross income. The "general rule" provides:

> In the case of a nonresident alien individual, the deductions shall be allowed only for purposes of section 871(b) and (except as provided by subsection (b)) only if and to the extent that they are connected with income which is effectively connected with the conduct of a trade or business within the United States; and the proper apportionment and allocation of the deductions for this purpose shall be determined as provided in regulations prescribed by the Secretary.

Section 873(b) provides three specific exceptions to this "general rule." First, nonresident aliens are allowed a deduction for a casualty or theft loss, pursuant to § 165. *See* § 873(b)(1). Second, nonresident aliens are allowed a deduction for charitable contributions and gifts, pursuant to

§ 170.  *See* § 873(b)(2).  And, most relevant here, nonresident aliens are allowed a deduction—but only *one*—for a personal exemption, pursuant to § 151.  *See* § 873(b)(3).

    **II.**      **Changes Arising from the Tax Cuts and Jobs Act**

In 2017, Congress passed the TCJA and suspended the personal exemption deduction for all taxpayers from 2018 through 2025.[2]  Instead of repealing § 151, Congress accomplished this suspension by reducing the exemption amount to zero for taxable years 2018 through 2025.  *See* § 151(d)(5)(A).  This method had at least two benefits.  First, it simplified restoration of the personal exemption deduction for tax year 2026 and later.  Second, it preserved unchanged the definitions in many other Code provisions that rely on the concept of entitlement to personal exemption deductions.  Striking § 151 altogether would have required substantial revisions to other parts of the Code that would then have to be undone once the suspension of the personal exemption deduction sunsets at the end of 2025.

For example, § 24 borrows the personal exemption deduction framework by allowing a child tax credit for "each qualifying child of the taxpayer for which the taxpayer is allowed a deduction under section 151."  *See* § 24(a).  If there were no § 151, Congress would have needed to add many new rules to § 24 just to achieve the status quo.  In another example, the definition in § 2(b)(1) of the filing status "head of household" depends in part on whether the taxpayer is "entitled to" a personal exemption deduction under § 151 for another individual.  *See* § 2(b)(1)(A)(ii), (B).

But reducing the personal exemption deduction amount to $0 raised a conceptual question:  Can someone still be "entitled to" or "allowed" a deduction if the deduction is worth $0?  To put this concern to rest, Congress added § 151(d)(5)(B), which states:

---

[2] *See* H.R. Rep. No. 115–466, at 204 (2017) (Conf. Rep.) (describing the TCJA as "suspend[ing] the deduction for personal exemptions.").

> For purposes of any other provision of this title, the reduction of the exemption amount to zero under subparagraph (A) shall not be taken into account in determining whether a deduction is allowed or allowable, or whether a taxpayer is entitled to a deduction, under this section.

With that addition, the answer is clear—for the purposes of §§ 2, 24, and any other provision of "this title" (Title 26, the Internal Revenue Code), a personal exemption deduction is still considered "allowed" or "allowable" (and an individual is still "entitled to" a personal exemption deduction) even though the personal exemption deduction amount has been reduced to zero. Stated another way, under § 151(d)(5)(B), if another provision of the Code looks to whether the taxpayer is allowed or entitled to a personal exemption deduction in determining eligibility for a tax benefit provided by that other provision, the taxpayer will be considered as being allowed the personal exemption deduction notwithstanding that the amount of the personal exemption deduction is zero.[3]

### III.  Section 151(d)(5)(B) Does Not Apply to Section 873(b)

Section 151(d)(5)(B) does not apply in this case.  Section 151(d)(5)(B) applies when there is a Code section that asks whether someone would be eligible for a deduction under § 151,

---

[3] Put a third way, the TCJA Conference Report described the purpose of § 151(d)(5)(B) as follows:

> The provision also clarifies that, for purposes of taxable years in which the personal exemption is reduced to zero, this should not alter the operation of those provisions of the Code which refer to a taxpayer allowed a deduction (or an individual with respect to whom a taxpayer is allowed a deduction) under section 151. Thus, for instance, sec. 24(a) allows a credit against tax with respect to each qualifying child of the taxpayer for which the taxpayer is allowed a deduction under section 151. A qualifying child, as defined under section 152(c), remains eligible for the credit, notwithstanding that the deduction under section 151 has been reduced to zero.

H.R. Rep. No. 115–466, at 203 n.16.

and then grants some other tax status or benefit on the basis of that eligibility. As discussed above, that is how §§ 2 and 24 work, and therefore § 151(d)(5)(B) applies in those contexts.

One could imagine a § 873(b) that works the same way. It could ask whether a nonresident alien would qualify for a personal exemption deduction under § 151 and then grant them an equivalent deduction if the answer is "yes." But that is not how § 873(b) actually works: it merely provides exceptions to the general rule of § 873(a) that prohibits most deductions. It does not itself grant entitlement to any deduction. Per the plain language of § 873(b), the operative provisions that grant entitlement to deductions to citizens/resident aliens and nonresident aliens alike are §§ 165, 170, and 151, not § 873(b)(1), (2), and (3).

Section 874 confirms that entitlement to a personal exemption deduction is conferred by § 151, even for nonresident aliens. Section 874(b) allows a "withholding agent," such as an employer, to account for the benefit of a personal exemption deduction when calculating the appropriate tax to withhold from the pay of nonresident alien employees. That Code section specifically describes the personal exemption deduction for nonresident aliens as being allowed by "section 151."[4] If § 873(b) independently allowed a personal exemption deduction for nonresident aliens, then § 874 would have referenced it instead.[5]

---

[4] "The benefit of the deduction for exemptions under section 151 may, in the discretion of the Secretary, and under regulations prescribed by the Secretary, be received by a non-resident alien individual entitled thereto, by filing a claim therefor with the withholding agent." § 874(b).

[5] *See also* Treas. Reg. § 1.874–1(a) ("[T]he nonresident alien individual may, for purposes of determining the amount of tax to be withheld under section 1441 from remuneration paid for labor or personal services performed within the United States, receive the benefit of the deduction for personal exemptions provided in section 151, to the extent allowable under section 873(b)(3) and paragraph (c)(3) of § 1.873–1, or in any applicable tax convention, by filing a claim therefore with the withholding agent.").

### IV.      Plaintiff's Policy Arguments Are Unavailing

Defendant agrees with plaintiff that a statute's plain language controls. *See Bostock v. Clayton City*, 140 S. Ct. 1731, 1749 (2020). Nonetheless, defendant states the following in response to plaintiff's policy arguments.

As a preliminary matter, plaintiff is incorrect that no U.S. taxpayer has ever been taxed on the entirety of his income. Even prior to the TCJA, a nonresident alien would not be allowed to claim a personal exemption if his only U.S. source income was "Fixed, Determinable, Annual or Periodical" (FDAP) income, which is taxed at a flat 30% rate and allows for *no* deductions, not even a personal exemption deduction. *See* § 871(a); Treas. Reg. § 1.871-7(a)(3); 2017 IRS Form 1040-NR. FDAP income is generally passive income such as interest and dividends, but also includes income from scholarships and prizes paid to nonresident alien artists and athletes for exhibitions or tournaments in the United States.[6]

Second, nonresident aliens have never been treated as favorably under the Code as citizens/resident aliens, even with respect to the personal exemption deduction. As noted above, § 873(b) limits nonresident aliens (from countries other than Canada and Mexico) to one personal exemption deduction, where citizens/resident aliens may be able to claim an exemption deduction for a spouse or dependent. And, relatedly, § 2(b)(3)(A) provides that, for purposes of Subtitle A (Income Taxes), a taxpayer does not qualify for "head of household" status "if at any time during the taxable year he is a nonresident alien."

Third, in practice, the negative effects on the finances of nonresident aliens like plaintiff may not be as severe as he implies. If a foreign citizen stays in the United States long enough, he

---

[6] *Fixed, Determinable, Annual, Periodical (FDAP) Income*, Internal Revenue Service (Sept. 27, 2022), https://www.irs.gov/individuals/international-taxpayers/fixed-determinable-annual-periodical-fdap-income.

could qualify as a resident alien under the "Substantial Presence Test" of § 7701 and then generally would be taxed similarly to a U.S. citizen.  Only the nonimmigrant foreign individuals who stay in the U.S. for a shorter period are taxed as nonresident aliens.  Also, without commenting on Jamaican law or plaintiff's specific foreign tax obligations, defendant notes that many countries besides the United States have tax laws that allow credits against domestic taxes owed for foreign taxes paid.  A nonimmigrant worker, like plaintiff, who does not stay in the United States long enough to qualify as a resident alien may earn enough income in his home country during the rest of the year to generate a tax bill sufficient to make full use of the foreign tax credit generated by the additional $415 paid in U.S. tax.

Finally, if plaintiff's position were to prevail, considerable administrative confusion would result.  The IRS has been consistent in its interpretation that the TCJA suspended personal exemption deductions for nonresident aliens.  And the Form 1040-NR has not had a line for a personal exemption deduction since 2018.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that plaintiff's motion for summary judgment be denied, defendant's cross-motion for summary judgment be granted, and judgment be entered in favor of the United States.

|  |  |
|---|---|
|  | Respectfully submitted, |
| June 30, 2023 | /s/ Elizabeth B. Villarreal<br>ELIZABETH B. VILLARREAL<br>Trial Attorney<br>U.S. Department of Justice<br>Tax Division<br>Court of Federal Claims Section<br>Post Office Box 26<br>Ben Franklin Post Office<br>Washington, D.C. 20044<br>Telephone: (202) 353-0553<br>Fax: (202) 514-9440<br>Elizabeth.Villarreal@usdoj.gov<br><br>DAVID A. HUBBERT<br>Deputy Assistant Attorney General<br>DAVID I. PINCUS<br>Chief, Court of Federal Claims Section<br>MARY M. ABATE<br>Assistant Chief<br><br>/s/ Mary M. Abate<br>Of Counsel |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 22-1875 T
(Senior Judge Marian Blank Horn)

CECIL BELL,

           Plaintiff,

v.

UNITED STATES OF AMERICA,

           Defendant.

**CERTIFICATE OF SERVICE**

I certify that on June 30, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Robert George Nassau
>Syracuse University College of Law
>Box 6543
>Syracuse, NY 13217-6543
>315-443-4582
>Fax: 315-443-3636
>Email: rnassau@syr.edu

>*/s/ Elizabeth B. Villarreal*
>ELIZABETH B. VILLARREAL
>U.S. Department of Justice
>Tax Division
>Court of Federal Claims Section
>Post Office Box 26
>Ben Franklin Post Office
>Washington, D.C. 20044
>Telephone: (202) 353-0553
>Fax: (202) 514-9440
>Elizabeth.Villarreal@usdoj.gov