# In the United States Court of Federal Claims

**No. 22-1875T**
**Filed: January 25, 2024**

```
* * * * * * * * * * * * * * * * * *
                                    *
  CECIL BELL,                       *
                                    *
               Plaintiff,           *
                                    *
  v.                                *
                                    *
  UNITED STATES,                    *
                                    *
               Defendant.           *
                                    *
* * * * * * * * * * * * * * * * * *
```

**Robert G. Nassau**, Syracuse University College of Law Low Income Taxpayer Clinic, Syracuse, N.Y., for plaintiff.

**Elizabeth B. Villarreal**, Trial Attorney, Tax Division, Court of Federal Claims Section, United States Department of Justice, Washington, D.C., for the defendant. With her were **Mary M. Abate**, Assistant Chief, Tax Division, **David I. Pincus**, Chief, Tax Division, and **David A. Hubbert**, Deputy Assistant Attorney General, Tax Division, United States Department of Justice, Washington, D.C.

# O P I N I O N

## HORN, J.

Plaintiff Cecil Bell filed a complaint in the United States Court of Federal Claims seeking a tax refund of $415.00 for the 2018 tax year. Plaintiff and his counsel argue Mr. Bell is entitled to a tax refund pursuant to 26 U.S.C. § 151(d)(5)(B) (2018) and 26 U.S.C. § 873(b)(3) (2018).

## BACKGROUND

On December 22, 2017, the Tax Cuts and Jobs Act was enacted. See Pub. L. No. 115-97, 131 Stat. 2054 (2017). The Tax Cuts and Jobs Act amended multiple provisions of Title 26, including 26 U.S.C. § 151, which allows for deductions from taxable income for certain personal exemptions. Prior to the passage of the Tax Cuts and Jobs Act, 26 U.S.C. § 151(d)(1) provided that, "[e]xcept as otherwise provided in this subsection, the term 'exemption amount' means $2,000." (alteration added). Although the Tax Cuts and Jobs Act did not amend 26 U.S.C. § 151(d)(1), the Tax Cuts and Jobs Act amended 26

U.S.C. § 151(d)(4) and added 26 U.S.C. § 151(d)(5), which established special rules for taxable years 2018 through 2025. See Tax Cuts and Jobs Act, 131 Stat. 2054 § 11041. The amendment to 26 U.S.C. § 151(d)(4) limited the application of 26 U.S.C. § 151(d)(4), stating "[e]xcept as provided by paragraph (5)." Id. (alteration added).[1] Under 26 U.S.C.

---

[1] The statute at 26 U.S.C. § 151(d) provides in full:

> **(d) Exemption amount.** For purposes of this section–
> **(1) In general.** Except as otherwise provided in this subsection, the term "exemption amount" means $2,000.
> **(2) Exemption amount disallowed in case of certain dependents.** In the case of an individual with respect to whom a deduction under this section is allowable to another taxpayer for a taxable year beginning in the calendar year in which the individual's taxable year begins, the exemption amount applicable to such individual for such individual's taxable year shall be zero.
> **(3) Phaseout.**
> **(A)** In general. In the case of any taxpayer whose adjusted gross income for the taxable year exceeds the applicable amount in effect under section 68(b), the exemption amount shall be reduced by the applicable percentage.
> **(B)** Applicable percentage. For purposes of subparagraph (A), the term "applicable percentage" means 2 percentage points for each $2,500 (or fraction thereof) by which the taxpayer's adjusted gross income for the taxable year exceeds the applicable amount in effect under section 68(b). In the case of a married individual filing a separate return, the preceding sentence shall be applied by substituting "$1,250" for "$2,500". In no event shall the applicable percentage exceed 100 percent.
> **(C)** Coordination with other provisions. The provisions of this paragraph shall not apply for purposes of determining whether a deduction under this section with respect to any individual is allowable to another taxpayer for any taxable year.
> **(4)** Inflation adjustment. Except as provided in paragraph (5), in the case of any taxable year beginning in a calendar year after 1989, the dollar amount contained in paragraph (1) shall be increased by an amount equal to–
> **(A)** such dollar amount, multiplied by
> **(B)** the cost-of-living adjustment determined under section 1(f)(3) for the calendar year in which the taxable year begins, by substituting "calendar year 1988" for "calendar year 2016" in subparagraph (A)(ii) thereof.
> **(5) Special rules for taxable years 2018 through 2025.** In the case of a taxable year beginning after December 31, 2017, and before January 1, 2026–
> **(A)** Exemption amount. The term "exemption amount" means zero.
> **(B)** References. For purposes of any other provision of this title, the reduction of the exemption amount to zero under subparagraph (A) shall not be taken into account in determining whether a deduction is allowed or

§ 151(d)(5)(A), for tax years beginning after December 31, 2017 and before January 1, 2026, "[t]he term 'exemption amount' means zero." Id. (alteration added). The Tax Cuts and Jobs Act also provided, in 26 U.S.C. § 151(d)(5)(B), that, "[f]or purposes of any other provision of this title, the reduction of the exemption amount to zero under subparagraph (A) shall not be taken into account in determining whether a deduction is allowed or allowable, or whether a taxpayer is entitled to a deduction, under this section." Tax Cuts and Jobs Act, 131 Stat. 2054 § 11041 (alteration added). The statute at 26 U.S.C. § 151(a) states that "[i]n the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income." 26 U.S.C. § 151(a) (alteration added). The exemptions provided by 26 U.S.C. § 151(a) include up to two "exemption[s] of the exemption amount" for the taxpayer and a spouse, provided by 26 U.S.C. § 151(b), and one "exemption of the exemption amount" for each qualifying dependent, provided by 26 U.S.C. § 151(c). 26 U.S.C. §§ 151(b)-(c) (alteration added).

## FINDINGS OF FACT

The facts of this case appear to be uncontested. Plaintiff, Cecil Bell, in 2018 was a Jamaican citizen and a "nonresident alien" of the United States as defined by 26 U.S.C. § 7701(b)(1)(B).[2] The statute at 26 U.S.C. § 873, which was not amended by the Tax Cuts and Jobs Act, governs deductions that nonresident aliens may claim when computing taxable income.[3] The statute at 26 U.S.C. § 873(a) provides what the statute describes as a "General rule" that

---

allowable, or whether a taxpayer is entitled to a deduction, under this section.

26 U.S.C. § 151(d) (2018) (emphasis in original).

[2] The statute at 26 U.S.C. § 7701(b)(1)(B) (2018) states that "[a]n individual is a nonresident alien if such individual is neither a citizen of the United States nor a resident of the United States (within the meaning of subparagraph (A))," and 26 U.S.C. §§ 7701(b)(1)(A)(i)—(iii) defines a resident alien as an individual who either "is a lawful permanent resident of the United States at any time during such calendar year," "meets the substantial presence test of paragraph (3) [26 U.S.C. § 7701(b)(3)]," or "makes the election provided in paragraph (4) [26 U.S.C. § 7701(b)(4)]." (alterations added). Defendant does not allege that plaintiff meets the substantial presence test of 26 U.S.C. § 7701(b)(3) or that plaintiff has made the election provided in 26 U.S.C. § 7701(b)(4). The parties agree that, in 2018, plaintiff was a citizen of Jamaica and a nonresident alien of the United States.

[3] The statute at 26 U.S.C. § 873 provides in full:

**§ 873. Deductions**
**(a) General rule.** In the case of a nonresident alien individual, the deductions shall be allowed only for purposes of section 871(b) and (except as provided by subsection (b)) only if and to the extent that they are

[i]n the case of a nonresident alien individual, the deductions shall be allowed only for purposes of section 871(b)[4] and (except as provided by subsection (b)) only if and to the extent that they are connected with income which is effectively connected with the conduct of a trade or business within the United States.

26 U.S.C. § 873(a) (alteration and footnote added). The statute at 26 U.S.C. § 873(b) provides three exceptions to the "General rule," for losses, charitable contributions, and personal exemptions, meaning that for these three exceptions, a nonresident alien may take deductions from income not connected with a trade or business within the United States. The exceptions for losses and charitable contributions, provided by 26 U.S.C. § 873(b)(1)-(2), are not relevant to this case. The statute at 26 U.S.C. § 873(b)(3) addresses the number of exemptions available and provides a "deduction for personal exemptions allowed by section 151, except that only one exemption shall be allowed under section 151 unless the taxpayer is a resident of a contiguous country or is a national of the United States." 26 U.S.C. § 873(b)(3).

---

connected with income which is effectively connected with the conduct of a trade or business within the United States; and the proper apportionment and allocation of the deductions for this purpose shall be determined as provided in regulations prescribed by the Secretary.

**(b) Exceptions.** The following deductions shall be allowed whether or not they are connected with income which is effectively connected with the conduct of a trade or business within the United States:

**(1) Losses.** The deduction allowed by section 165 for casualty or theft losses described in paragraph (2) or (3) of section 165(c), but only if the loss is of property located within the United States.

**(2) Charitable contributions.** The deduction for charitable contributions and gifts allowed by section 170 [26 U.S.C. § 170].

**(3) Personal exemption.** The deduction for personal exemptions allowed by section 151 [26 U.S.C. § 151], except that only one exemption shall be allowed under section 151 [26 U.S.C. § 151] unless the taxpayer is a resident of a contiguous country or is a national of the United States.

**(c) Cross Reference.** For rule that certain foreign taxes are not to be taken into account in determining deduction or credit, see section 906(b)(1).

26 U.S.C. § 873 (2018) (alterations added; emphasis in original).

4 The statute at 26 U.S.C. § 871(b)(1) (2018) imposes a tax on a "nonresident alien individual engaged in trade or business within the United States . . . on his taxable income which is effectively connected with the conduct of a trade or business within the United States." (omission added). The statute at 26 U.S.C. § 871(b)(2) provides that "[i]n determining taxable income for purposes of paragraph (1), gross income includes only gross income which is effectively connected with the conduct of a trade or business within the United States." (alteration added).

In April 2019, plaintiff, Cecil Bell, filed his 2018 federal income tax return as a nonresident alien with the Internal Revenue Service. In his original, filed tax return, plaintiff reported $8,647.00 of gross income, adjusted gross income, and taxable income, as well as $863.00 of income tax liability and $866.00 of income tax withholding. Plaintiff asserts in his complaint in this court that he did not claim a personal exemption deduction under 26 U.S.C. § 151 in his 2018 original tax return, but did claim a tax refund of $3.00, which plaintiff alleges he received in April 2019.

Plaintiff's complaint states that on December 12, 2019, plaintiff filed[5] a 2018 amended tax return with the Internal Revenue Service and "claimed a personal exemption deduction, in the amount of $4,150, pursuant to 26 U.S.C. § 151." According to plaintiff, "[a]s a consequence of his claim of a personal exemption deduction, plaintiff's 2018 Amended Return claimed a refund of $415." (alteration added).Plaintiff received a letter, dated February 24, 2020, from the Internal Revenue Service which indicated that the Internal Revenue Service had "adjusted your account as you requested." Contingent on whether the letter's recipient "owe[s] any other taxes or other legal debts," the February 24, 2020 letter states the recipient "will get a refund of your overpayment in four to six weeks." (alteration added).[6] Plaintiff also alleges that, on June 22, 2020, plaintiff's counsel of record throughout the above captioned case contacted the Internal Revenue Service Practitioner Priority Line and inquired about plaintiff's 2018 amended tax return. Plaintiff alleges that the Internal Revenue Service Practitioner Priority Line informed plaintiff's counsel "that Plaintiff's 2018 case had been closed without adjustment."

On December 20, 2022, plaintiff filed a timely complaint in the United States Court of Federal Claims, pursuant to 26 U.S.C. §§ 7422(a)[7] and 6532(a)(1),[8] seeking to recover

---

[5] Plaintiff's amended tax return was postmarked December 19, 2019.

[6] Both parties appear to agree that plaintiff has not received the refund plaintiff claimed on his 2018 amended tax return.

[7] The statute at 26 U.S.C. § 7422(a) provides:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a) (2018).

[8] The statute at 26 U.S.C. § 6532(a)(1) provides:

the tax refund of $415.00 he claimed in his 2018 amended tax return, based on plaintiff's alleged entitlement to a personal exemption deduction under 26 U.S.C. § 151. Plaintiff interprets the language of 26 U.S.C. § 151(d)(5)(B) to serve a "dual-function." The statute at 26 U.S.C. § 151(d)(5)(B) states: "For purposes of any other provision of this title, the reduction of the exemption amount to zero under subparagraph (A) shall not be taken into account in determining whether a deduction is allowed or allowable, or whether a taxpayer is entitled to a deduction, under this section." 26 U.S.C. § 151(d)(5)(B). Plaintiff argues:

> First, it [26 U.S.C. § 151(d)(5)(B)] provides that the reduction of the exemption amount to zero "shall not be taken into account in determining whether a deduction is allowed or allowable . . . under this section." This is the part that Defendant correctly observes preserves an eligible taxpayer's right to the child tax credit under Section 24, or head-of-household filing status under Section 2. But there is a second part to Section 151(d)(5)(B), and that part provides that the reduction of the exemption amount to zero "shall not be taken into account in determining whether . . . a taxpayer is entitled to a deduction [sic[9]] under this section." It is this second part of Section 151(d)(5)(B) that, in conjunction with Section 873(b)(3), preserved a nonresident alien's "entitlement" to a personal exemption deduction, and that is because, as noted above, Section 873(b) itself grants entitlement to a personal exemption deduction.

(alterations and footnote added; omissions in original). Plaintiff argues the Tax Cuts and Jobs Act preserved the entitlement for a personal exemption deduction for nonresident aliens, while at the same time eliminating the entitlement for United States citizen and resident alien taxpayers because, according to plaintiff, "[s]ection 873(b) itself grants entitlement to a personal exemption deduction" to nonresident aliens. (alteration added). Applying plaintiff's interpretation of 26 U.S.C. §§ 151(d)(5)(B) and 873(b)(3), Mr. Bell and his attorney argue:

> Given the clear language of 26 U.S.C. § 151(d)(5)(B), that "[f]or the purposes of *any other* provision of this title," which would include 26 U.S.C. § 873(b)(3), "the reduction of the exemption amount to zero . . . *shall not be*

---

No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

26 U.S.C. § 6532(a)(1) (2018).

[9] Plaintiff's quotation is missing a comma. The statute at 26 U.S.C. § 151(d)(5)(B), following plaintiff's omission, states: "a taxpayer is entitled to a deduction, under this section." 26 U.S.C. § 151(d)(5)(B).

*taken into account* in determining . . . whether a taxpayer is entitled to a deduction under this section [26 U.S.C. § 151]," Plaintiff is entitled to the personal exemption deduction, and refund, claimed on his 2018 Amended Return.

(alterations, emphasis, and omissions in original).

In response to plaintiff's complaint, defendant filed an answer. Subsequently, the parties filed cross-motions for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). The arguments in plaintiff's motion for summary judgment are consistent with the allegations in plaintiff's complaint. Plaintiff argues that:

[A]mendments to the Internal Revenue Code made by the Tax Cuts and Jobs Act of 2017 did not alter, suspend or eliminate a nonresident alien's traditional and long-standing right to claim a personal exemption deduction. Specifically, Congress did not in any way amend 26 U.S.C. § 873(b)(3), the provision that has allowed a nonresident alien to claim the personal exemption deduction for decades. Moreover, amendments made to 26 U.S.C. § 151, while effectively suspending a United States citizen or resident alien's right to claim the personal exemption deduction (in favor of a far larger standard deduction), left a nonresident alien's rights unchanged, in fact explicitly preserving them. Finding otherwise would go against the plain language of 26 U.S.C. § 873(b)(3), would fail to recognize the purpose of 26 U.S.C. § 151(d)(5)(B), and would ignore clear Congressional intent. Further, such a finding would reverse long-established Federal income tax policy, dating back to at least 1939, under which *no* individual – United States citizen, resident alien and nonresident alien alike – and particularly low-income individuals such as Plaintiff – has been taxed from his first dollar of earned income.

(alteration added; emphasis in original).

In defendant's cross-motion for summary judgment, defendant argues "Section 151(d)(5)(B) does not apply in this case. Section 151(d)(5)(B) applies when there is a Code section that asks whether someone would be eligible for a deduction under § 151, and then grants some other tax status or benefit on the basis of eligibility." In the reply brief to the cross-motion for summary judgment, defendant argues plaintiff's interpretation "purports to address a substantive issue where there is none" and that, in fact, the "three wordings—'allowed,' 'allowable,' and 'entitled to'—are synonyms in this context, included by Congress only because various 'other provision[s]' of the Code that reference § 151 do so using different language." (alteration in original). The defendant further argues that "[t]here is no entitlement granted by § 873(b), and in particular, no entitlement that is contingent on whether a deduction under § 151 is allowed to a taxpayer, whether it is allowable, or whether the taxpayer is entitled to that deduction." (alteration added). The cross-motions for summary judgment were fully briefed and oral argument was held.

**DISCUSSION**

RCFC 56 is similar in language and effect to Rule 56 of the Federal Rules of Civil Procedure. Both rules provide that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a) (2023); Fed. R. Civ. P. 56(a) (2024) (alteration added); see also Young v. United Parcel Serv., Inc., 575 U.S. 206, 231 (2015); Alabama v. North Carolina, 560 U.S. 330, 344 (2010); Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Anderson v. United States, 23 F.4th 1357, 1361 (Fed. Cir. 2022); Shell Oil Co. v. United States, 7 F.4th 1165, 1171 (Fed. Cir. 2021); Authentic Apparel Grp., LLC v. United States, 989 F.3d 1008, 1014 (Fed. Cir. 2021); Biery v. United States, 753 F.3d 1279, 1286 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Ladd v. United States, 713 F.3d 648, 651 (Fed. Cir. 2013); Minkin v. Gibbons, P.C., 680 F.3d 1341, 1349 (Fed. Cir. 2012); Consol. Coal Co. v. United States, 615 F.3d 1378, 1380 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 564 U.S. 1004 (2011); 1st Home Liquidating Trust v. United States, 581 F.3d 1350, 1355 (Fed. Cir. 2009); Arko Exec. Servs., Inc. v. United States, 553 F.3d 1375, 1378 (Fed. Cir. 2009); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283 (Fed. Cir. 2008), reh'g and reh'g en banc denied, 556 F.3d 1329 (Fed. Cir. 2009); Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2005); Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1370-71 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005); Capitol Indem. Corp. v. United States, 162 Fed. Cl. 388, 397 (2022); King v. United States, 159 Fed. Cl. 450, 461 (2022); Desert Sunlight 250, LLC v. United States, 157 Fed. Cl. 209, 222 (2021).

A fact is material if it will make a difference in the result of a case under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Marriott Int'l Resorts, L.P. v. United States, 586 F.3d 962, 968 (Fed. Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248); Mata v. United States, 114 Fed. Cl. 736, 744 (2014); Arrañaga v. United States, 103 Fed. Cl. 465, 467-68 (2012); Thompson v. United States, 101 Fed. Cl. 416, 426 (2011); Cohen v. United States, 100 Fed. Cl. 461, 469 (2011). Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001); Gorski v. United States, 104 Fed. Cl. 605, 609 (2012); Walker v. United States, 79 Fed. Cl. 685, 692 (2008); Curtis v. United States, 144 Ct. Cl. 194, 199 (1958), cert. denied, 361 U.S. 843 (1959), reh'g denied, 361 U.S. 941 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. See Dupree v. Younger, 598 U.S. 729, 737 (2023) ("Rule 56 thus contemplates that the court will sometimes deny the motion because the facts are genuinely in dispute and other times because the law does not support the movant's position."); Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; see, e.g., Schlup v. Delo, 513 U.S. 298, 332 (1995); BASF Corp. v. SNF Holding Co., 955 F.3d

958, 963 (Fed. Cir. 2020); <u>TigerSwan, Inc. v. United States</u>, 118 Fed. Cl. 447, 451 (2014); <u>Dana R. Hodges Trust v. United States</u>, 111 Fed. Cl. 452, 455 (2013); <u>Cohen v. United States</u>, 100 Fed. Cl. at 469-70; <u>Boensel v. United States</u>, 99 Fed. Cl. 607, 611 (2011); <u>Macy Elevator, Inc. v. United States</u>, 97 Fed. Cl. 708, 717 (2011); <u>Dick Pacific/GHEMM, JV ex rel. W.A. Botting Co. v. United States</u>, 87 Fed. Cl. 113, 126 (2009); <u>Johnson v. United States</u>, 49 Fed. Cl. 648, 651 (2001), <u>aff'd</u>, 52 F. App'x 507 (Fed. Cir. 2002), <u>published</u> <u>at</u> 317 F.3d 1331 (Fed. Cir. 2003). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding or whether the issues presented are so one-sided that one party must prevail as a matter of law. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 250-52; <u>Baldi Bros. v. United States, 165 Fed. Cl. 471, 475 (2023)</u>. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. <u>See, e.g.</u>, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Marriott Int'l Resorts, L.P. v. United States</u>, 586 F.3d at 968; <u>3rd Eye Surveillance, LLC v. United States</u>, 151 Fed. Cl. 49, 54 (2020) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. at 587); <u>Pfizer Inc. v. United States</u>, 149 Fed. Cl. 711, 715 (2020) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. at 587). In such cases, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

Summary judgment, however, will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." (alteration added). <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248; <u>see also</u> <u>Long Island Sav. Bank, FSB v. United States</u>, 503 F.3d 1234, 1244 (Fed. Cir.), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2007), <u>cert. denied</u>, 555 U.S. 812 (2008); <u>Eli Lilly & Co. v. Barr Lab'ys, Inc.</u>, 251 F.3d 955, 971 (Fed. Cir.), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2001), <u>cert. denied</u>, 534 U.S. 1109 (2002); <u>Gen. Elec. Co. v. Nintendo Co.</u>, 179 F.3d 1350, 1353 (Fed. Cir. 1999); <u>TigerSwan, Inc. v. United States</u>, 118 Fed. Cl. at 451; <u>Stephan v. United States</u>, 117 Fed. Cl. 68, 70 (2014). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. <u>See</u> <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. at 587-88; <u>Yant v. United States</u>, 588 F.3d 1369, 1371 (Fed. Cir. 2009), <u>cert. denied</u>, 562 U.S. 827 (2010), <u>overruled on other grounds</u>, <u>Moore v United States</u>, 66 F.4th 991 (Fed. Cir. 2023) (en banc); <u>Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.</u>, 272 F.3d 1365, 1369 (Fed. Cir. 2001), <u>reh'g and reh'g en banc denied</u>, 293 F.3d 1364 (Fed. Cir. 2002), <u>cert. denied</u>, 539 U.S. 957 (2003); <u>Monon Corp. v. Stoughton Trailers, Inc.</u>, 239 F.3d at 1257; <u>Wanlass v. Fedders Corp.</u>, 145 F.3d 1461, 1463 (Fed. Cir.), <u>reh'g denied and en banc suggestion declined</u> (Fed. Cir. 1998); <u>see also</u> <u>Am. Pelagic Co. v. United States</u>, 379 F.3d at 1371 (citing <u>Helifix Ltd. v. Blok-Lok, Ltd.</u>, 208 F.3d 1339, 1345-46 (Fed. Cir. 2000)); <u>Dana R. Hodges Trust v. United States</u>, 111 Fed. Cl. at 455; <u>Boensel v. United States</u>, 99 Fed. Cl. at 611 ("'The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 255) (citing <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. at 587-

88; Casitas Mun. Water Dist. v. United States, 543 F.3d at 1283; Lathan Co. Inc. v. United States, 20 Cl. Ct. 122, 125 (1990))); see also Am. Seating Co. v. USSC Grp., Inc., 514 F.3d 1262, 1266-67 (Fed. Cir.), reh'g en banc denied (Fed. Ci. 2008); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 807 (Fed. Cir. 1999). "However, once a moving party satisfies its initial burden, mere allegations of a genuine issue of material fact without supporting evidence will not prevent entry of summary judgment." Republic Sav. Bank, F.S.B. v. United States, 584 F.3d 1369, 1374 (Fed. Cir. 2009); see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48; Univ. S. Florida v. United States, 146 Fed. Cl. 274, 280 (2019).

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case, and it does not follow that summary judgment should be granted to one side or the other. See Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed. Cir. 1988) (citing Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987)); see also Marriott Int'l Resorts, L.P. v. United States, 586 F.3d at 968-69; Bubble Room, Inc. v. United States, 159 F.3d 553, 561 (Fed. Cir. 1998) ("The fact that both the parties have moved for summary judgment does not mean that the court must grant summary judgment to one party or the other."), reh'g denied and en banc suggestion declined (Fed. Cir. 1999); Massey v. Del Lab'ys, Inc., 118 F.3d 1568, 1573 (Fed. Cir. 1997); B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 593 (6th Cir. 2001); Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000); Chevron USA, Inc. v. Cayetano, 224 F.3d 1030, 1037 n.5 (9th Cir. 2000), cert. denied, 532 U.S. 942 (2001); Allstate Ins. Co. v. Occidental Int'l, Inc., 140 F.3d 1, 2 (1st Cir. 1998); LewRon Television, Inc. v. D.H. Overmyer Leasing Co., 401 F.2d 689, 692 (4th Cir. 1968), cert. denied, 393 U.S. 1083 (1969); Rogers v. United States, 90 Fed. Cl. 418, 427 (2009), subsequent determination, 93 Fed. Cl. 607 (2010), aff'd, 814 F.3d 1299 (2015); Consol. Coal Co. v. United States, 86 Fed. Cl. 384, 387 (2009), aff'd, 615 F.3d 1378 (Fed. Cir.), and reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 564 U.S. 1004 (2011); St. Christopher Assocs., L.P. v. United States, 75 Fed. Cl. 1, 8 (2006), aff'd, 511 F.3d 1376 (Fed. Cir. 2008); Reading & Bates Corp. v. United States, 40 Fed. Cl. 737, 748 (1998). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration, or, otherwise stated, in favor of the non-moving party. See First Com. Corp. v. United States, 335 F.3d 1373, 1379 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003); Beard v. United States, 125 Fed. Cl. 148, 156 (2016); Two Shields v. United States, 119 Fed. Cl. 762, 775 (2015), aff'd sub nom. Ramona Two Shields v. United States, 820 F.3d 1324 (Fed. Cir. 2016).

As described above, plaintiff in this case alleges entitlement to a personal exemption deduction of $415.00 as a nonresident alien and pursuant to 26 U.S.C. § 151 and 26 U.S.C. § 873(b)(3). To decide the issue, this court must determine whether the language of 26 U.S.C. § 151(d)(5)(B), in conjunction with the unamended statute at 26 U.S.C. § 873(b)(3), allows nonresident alien taxpayers to ignore Congress's reduction of the exemption amount to zero when determining the value of their personal exemption deduction allowed by 26 U.S.C. § 151.

In a statutory interpretation analysis, "[t]he first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002) (alteration added) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)); see also Great Concepts, LLC v. Chutter, Inc., 84 F.4th 1014, 1020 (Fed. Cir. 2023) ("'As in any case of statutory construction, our analysis begins with the language of the statute.'") (quoting Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999)); Republic of Sudan v. Harrison, 139 S. Ct. 1048, 1056 (2019) (quoting Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S, 566 U.S. 399, 412 (2012) ("We begin 'where all such inquiries must begin: with the language of the statute itself.'" (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989)))); Jimenez v. Quarterman, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute.").

"When tasked with interpreting a statute, we start by exhausting all traditional tools of interpretation to determine its meaning. The starting point is the text itself." Obsidian Sols. Grp., LLC v. United States, 54 F.4th 1371, 1374 (Fed. Cir. 2022) (citing United States v. Hohri, 482 U.S. 64, 69 (1987); see also LaBonte v. United States, 43 F.4th 1357, 1367–68 (Fed. Cir. 2022) ("We begin our analysis, as we must, with the pertinent statutory language.") (citing Food Mktg. Inst. v. Argus Leader Media, 139 S. Ct. 2356, 2364 (2019) ("In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself."); Nicely v. United States, 23 F.4th 1364, 1368 (Fed. Cir. 2022) ("When interpreting a statute, we 'begin with the language employed by Congress.'" (quoting Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist., 541 U.S. 246, 252 (2004)))); Wright v. Sec'y of Health and Hum. Servs., 22 F.4th 999, 1004 (Fed. Cir. 2022) ("The 'starting point' in statutory construction 'is the language of the statute'—not a single sentence or word of the statute, but rather the 'provisions of the whole law,' its object, and its policy." (quoting Dole v. United Steelworkers of Am., 494 U.S. 26, 35 (1990))); AD Global Fund, LLC ex rel. N. Hills Holding, Inc. v. United States, 481 F.3d 1351, 1353 (Fed. Cir. 2007) ("'The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" (quoting Barnhart v. Sigmon Coal Co., 534 U.S. at 450)); Starry Assocs., Inc. v. United States, 892 F.3d 1372, 1377 (Fed. Cir. 2018); PDS Consultants, Inc. v. United States, 907 F.3d 1345, 1357 (Fed. Cir. 2018); Bettcher Indus., Inc. v. Bunzl USA, Inc., 661 F.3d 629, 644 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2011); Strategic Hous. Fin. Corp. of Travis Cnty. v. United States, 608 F.3d 1317, 1323 (Fed. Cir.) ("When interpreting any statute, we look first to the statutory language."), reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 562 U.S. 1221 (2011). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. at 341 (citing Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477 (1992); McCarthy v. Bronson, 500 U.S. 136, 139 (1991)); see also King v. Burwell, 576 U.S. 473, 486 (2015) ("[W]hen deciding whether the language is plain, we must read the words 'in their context and with a view to their place in the overall statutory scheme.'" (quoting Food & Drug Admin. v.

Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000))). In construing a statute, courts "'must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose[.]'" Schindler Elevator Corp. v. United States ex rel. Kirk, 563 U.S. 401, 407 (2011) (alteration added) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175 (2009) (internal quotation marks omitted)). Even "'[w]hen terms used in a statute are undefined, we give them their ordinary meaning[.]'" Id. (alterations added) (quoting Asgrow Seed Co. v. Winterboer, 513 U.S. 179, 187 (1995)); see also Unicolors, Inc. v. H&M Hennes & Mauritz, L.P., 595 U.S. 178, 184-85 (2022) (using the ordinary or commonplace definition of "knowledge" to interpret statutory text); Wolfe v. McDonough, 28 F.4th 1348, 1354 (Fed. Cir. 2022) ("It is a 'fundamental canon of statutory construction' that 'unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning[] . . . at the time Congress enacted the statute.'" (alteration and omission in original) (quoting Perrin v. United States, 444 U.S. 37, 42 (1979)). "[W]e consider each question [of statutory interpretation] in the context of the entire statute." Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S, 566 U.S. at 412 (alterations added) (citing Robinson v. Shell Oil Co., 519 U.S. at 341); Roberts v. Sea-Land Servs., Inc., 566 U.S. 93, 100 (2012); Bush v. United States, 655 F.3d 1323, 1329 (Fed. Cir. 2011), cert. denied, 566 U.S. 1021 (2012).

The initial inquiry into the statutory text ceases "'if the statutory language is unambiguous and "the statutory scheme is coherent and consistent.""" Barnhart v. Sigmon Coal Co., 534 U.S. at 450 (quoting Robinson v. Shell Oil Co., 519 U.S. at 340 (quoting United States v. Ron Pair Enters., Inc., 489 U.S. at 240); see also King v. Burwell, 576 U.S. at 486 ("If the statutory language is plain, we must enforce it according to its terms.") (citing Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251 (2010)); Sucic v. Wilkie, 921 F.3d 1095, 1098 (Fed. Cir. 2019) (quoting Barnhart v. Sigmon Coal Co., 534 U.S. at 450); Bettcher Indus., Inc. v. Bunzl USA, Inc., 661 F.3d at 644; Arko Foods Int'l, Inc. v. United States, 654 F.3d 1361, 1364 (Fed. Cir. 2011) ("'[W]here Congress has clearly stated its intent in the language of a statute, a court should not inquire further into the meaning of the statute.'" (alteration in original) (quoting Millenium Lumber Distrib. Ltd. v. United States, 558 F.3d 1326, 1328 (Fed. Cir.), reh'g denied (Fed. Cir. 2009)); Am. Airlines, Inc. v. United States, 551 F.3d 1294, 1300 (Fed. Cir. 2008). Thus, when the "'statute's language is plain, "the sole function of the courts is to enforce it according to its terms[.]"'" Johnson v. United States, 529 U.S. 694, 723 (2000) (Scalia, J., dissenting) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. at 241 (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917))); see also Jimenez v. Quarterman, 555 U.S. at 118; Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)); Bartels Tr. for the Benefit of Cornell Univ. ex rel. Bartels v. United States, 617 F.3d 1357, 1361 (Fed. Cir.) (citing Sharp v. United States, 580 F.3d 1234, 1237 (Fed. Cir. 2009)), reh'g en banc denied (Fed. Cir. 2010); Candle Corp. of Am. v. United States Int'l Trade Comm'n, 374 F.3d 1087, 1093 (Fed. Cir.), reh'g and reh'g denied (Fed. Cir. 2004).

When interpreting the plain meaning of the statute, it is the court's duty, if possible, to give meaning to every clause and word of the statute. See Setser v. United States, 566 U.S. 231, 239 (2012) ("Our decision today follows the interpretive rule they invoke, that

we must 'give effect . . . to every clause and word' of the Act." (omission in original) (quoting United States v. Menasche, 348 U.S. 528, 538–39 (1955))); see also Alaska Dep't of Env't Conservation v. EPA, 540 U.S. 461, 489 n.13 (2004) ("It is, moreover, 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (internal quotations omitted))); Williams v. Taylor, 529 U.S. 362, 404 (2000) (describing as a "cardinal principle of statutory construction" the rule that every clause and word of a statute must be given effect if possible); Wolfe v. McDonough, 28 F.4th at 1354–55 ("The presumption against surplusage additionally provides that a 'statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'") (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004) (citing 2A Norman J. Singer, Statutes and Statutory Construction § 46.06, at 181-86 (rev. 6th ed. 2000))); Boeing Co. v. Sec'y of the Air Force, 983 F.3d 1321, 1327 (Fed. Cir. 2020) (quoting Shea v. United States, 976 F.3d 1292, 1300 (Fed. Cir. 2020) ("[I]t is a 'cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute[.]'" (first alteration in original) (quoting Williams v. Taylor, 529 U.S. at 364))); Sharp v. United States, 580 F.3d at 1238. Similarly, the court must avoid an interpretation of a clause or word which renders other provisions of the statute inconsistent, meaningless, or superfluous. See Duncan v. Walker, 533 U.S. 167, 174 (2001) (noting that courts should not treat statutory terms as "surplusage"). The Federal Circuit has stated that "[w]e do not look at the text in a vacuum, but rather, we must consider the words 'in their context and with a view to their place in the overall statutory scheme.'" Obsidian Sols. Grp., LLC v. United States, 54 F.4th at 1374 (quoting King v. Burwell, 576 U.S. at 486) (alteration added). "[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Morton v. Mancari, 417 U.S. 535, 551 (1974) (alteration added); see also Radzanower v. Touche Ross & Co., 426 U.S. 148, 155 (1976) (quoting Morton v. Mancari, 417 U.S. at 551); Abrantes v. United States, 54 F.4th 1332, 1337 (Fed. Cir. 2022) ("'[W]here two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" (alteration in original) (quoting Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1018 (1984)); Xianli Zhang v. United States, 640 F.3d 1358, 1368 (Fed. Cir.) (citing Cathedral Candle Co. v. United States Int'l Trade Comm'n, 400 F.3d at 1365), reh'g and reh'g en banc denied (Fed. Cir. 2011), cert. denied, 566 U.S. 986 (2012); Hanlin v. United States, 214 F.3d 1319, 1321 (Fed. Cir.), reh'g denied (Fed. Cir. 2000).

        The United States Supreme Court also has held that the specific terms of a statute supersede general terms within that statute or within another statute that might otherwise control. See Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 228–29 (1957) ("'Specific terms prevail over the general in the same or another statute which otherwise might be controlling.'") (quoting Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 107 (1944) (quoting D. Ginsberg & Sons v. Popkin, 285 U.S. 204, 208 (1932)); see also Bloate v. United States, 559 U.S. 196, 207 (2010); Bulova Watch Co. v. United States, 365 U.S. 753, 761 (1961). In addition, the Supreme Court has endorsed "the 'normal rule of statutory construction' that 'identical words used in different parts of the same act are

intended to have the same meaning.'" Gustafson v. Alloyd Co., 513 U.S. 561, 570 (1995) (quoting Dep't of Revenue of Or. v. ACF Indus., Inc., 510 U.S. 332, 342 (1994)); see also Kislev Partners, L.P. ex rel. Bahar v. United States, 84 Fed. Cl. 385, 389, recons. denied, 84 Fed. Cl. 378 (2008). Furthermore, when "Congress has not 'directly spoken to the precise question at issue,'" a court shall sustain the agency's approach "so long as it is 'based on a permissible construction of the statute.'" Auer v. Robbins, 519 U.S. 452, 457 (1997) (citing Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984)).

In plaintiff's motion for summary judgment, plaintiff claims entitlement to a personal exemption deduction in the amount of $4,150.00, notwithstanding the statutory reduction of the personal exemption amount to zero by the Tax Cuts and Jobs Act in 26 U.S.C. § 151(d)(5)(A). Plaintiff also contends that the Tax Cuts and Jobs Act did not amend 26 U.S.C. § 873 and argues that 26 U.S.C. § 873 "provided – and still provides – that a nonresident alien is allowed the deduction for personal exemptions under 26 U.S.C. § 151." Plaintiff argues that 26 U.S.C. § 151(d)(5)(B), which, as described above, provides that "[f]or purposes of any other provision of this title, the reduction of the exemption amount to zero under subparagraph (A) shall not be taken into account in determining whether a deduction is allowed or allowable, or whether a taxpayer is entitled to a deduction, under this section." 26 U.S.C. § 151(d)(5)(B) (alteration added). Plaintiff argues:

> Indisputably, 26 U.S.C. § 873(b)(3), which grants a nonresident alien the right to claim a personal exemption deduction, is an "other provision" of "this title [26 U.S.C.]." Accordingly, as to a nonresident alien such as Plaintiff, the reduction of the exemption amount to zero under 26 U.S.C. § 151(d)(5)(A) is irrelevant, and "shall not be taken into account" in determining a [sic] his continued ability to claim the personal exemption deduction.

(first alteration in original). Plaintiff, therefore, argues that 26 U.S.C. § 151(d)(5)(B), "in conjunction with the unchanged 26 U.S.C. § 873(b)(3), preserved the personal exemption deduction for nonresident aliens" such that plaintiff, Cecil Bell, is entitled to a personal exemption deduction of an amount greater than zero dollars. In support, plaintiff offers multiple arguments by way of comparing 26 U.S.C. § 873 to that of other unassociated provisions of Title 26. Plaintiff argues, "[t]he personal exemption deduction in 26 U.S.C. § 873(b)(3) is one of many provisions in the Code that remain in effect and whose efficacy was preserved by 26 U.S.C. § 151(d)(5)(B)," citing 26 U.S.C. §§ 2(b)(1)(B), 24(a), 24(h)(4), 36B, and 152(d)(1)(B). (alteration added).[10]

_____

[10] The statutes at 26 U.S.C. §§ (2)(b)(1)(B) and 24(a) are discussed below in this Opinion. The statute at 26 U.S.C. § 36B, titled, "Refundable credit for coverage under a qualified health plan," at 26 U.S.C. § 36B(c)(1)(D) states: "**Denial of credit to dependents.**–No credit shall be allowed under this section to any individual with respect to whom a deduction under section 151 is allowable to another taxpayer for a taxable year beginning in the calendar year in which such individual's taxable year begins." 26 U.S.C. § 36B(c)(1)(D) (2018) (emphasis in original). Upon further review, the statutes at 26 U.S.C.

Plaintiff also argues that "[i]f Congress had truly intended for a nonresident alien to pay Federal income tax from his first dollar of salary, it would have explicitly amended or suspended 26 U.S.C. § 873(b)(3), or it would not have added 26 U.S.C. § 151(b)(5)(B)." (alteration added). Plaintiff notes that Congress explicitly suspended other provisions, such as miscellaneous itemized deductions, in 26 U.S.C. § 67(g),[11] and the exclusion from income for qualified bicycle commuting reimbursements, in 26 U.S.C. § 132(f)(8).[12] According to plaintiff, Congress "left 26 U.S.C. § 873(b)(3) intact, with the understanding that, when combined with the addition of 26 U.S.C. § 151(d)(5)(B), a nonresident alien would continue to have some 'breathing room' before starting to owe Federal income tax." Plaintiff does not cite to any statutory language or other support for its argument to demonstrate that Congress intended its amendments to 26 U.S.C. §§ 67(g) and 132(f)(8) to imply that its amendment to 26 U.S.C. § 151(d)(5)(A) – the reduction of the exemption amount should have no effect when applied to 26 U.S.C. § 873(b)(3).

Plaintiff further argues that his interpretation of 26 U.S.C. § 151(d)(5)(B) is supported by a footnote in the Conference Report for the Tax Cuts and Jobs Act and that "nonresident aliens are still entitled to the personal exemption deduction." The referenced footnote is included in a section of the Conference Report titled, "Repeal of the deduction for personal exemptions," and addresses on 26 U.S.C. § 151(d)(5)(B), by stating:

> The provision also clarifies that, for purposes of taxable years in which the personal exemption is reduced to zero, this should not alter the operation of those provisions of the Code which refer to a taxpayer allowed a deduction (or an individual with respect to whom a taxpayer is allowed a deduction) under section 151. Thus, for instance, sec. 24(a) allows a credit against tax with respect to each qualifying child of the taxpayer for which the taxpayer is allowed a deduction under section 151. A qualifying child, as defined under section 152(c), remains eligible for the credit, notwithstanding that the deduction under section 151 has been reduced to zero.

H.R. Rep. No. 115-466 at 203 n.16 (2017). According to plaintiff, "the Conference Report is confirming that the effect of the reduction of the exemption amount to zero is limited

---

§§ 24(h)(4) and 152(d)(1)(B) do not support the proposition for which they are cited and are, therefore, not discussed below in this Opinion.

[11] The statute at 26 U.S.C. § 67(g) provides that, "[n]otwithstanding subsection (a), no miscellaneous itemized deduction shall be allowed for any taxable year beginning after December 31, 2017, and before January 1, 2026." 26 U.S.C. § 67(g) (2018) (alteration added).

[12] The statute at 26 U.S.C. § 132(f)(8) suspends the "qualified bicycle commuting reimbursement exclusion" for "any taxable year beginning after December 31, 2017, and before January 1, 2026." 26 U.S.C. § 132(f)(8) (2018).

and *should not alter* the operation of sections such as 26 U.S.C. § 873(b)(3) and the rights they provide." (emphasis in original). According to plaintiff's interpretation that "Section 151(d)(5)(B) has two parts" and that the Conference Report's footnote also should apply to the statute at 26 U.S.C. § 873(b)(3). Plaintiff argues:

> First, it [26 U.S.C. § 151(d)(5)(B)] provides that the reduction of the exemption amount to zero "shall not be taken into account in determining whether a deduction is allowed or allowable . . . under this section." This is the part that Defendant correctly observes preserves an eligible taxpayer's right to the child tax credit under Section 24, or head-of-household filing status under Section 2.
>
> But there is a second part to Section 151(d)(5)(B), and that part provides that the reduction of the exemption amount to zero "shall not be taken into account in determining whether . . . a taxpayer is entitled to a deduction [sic[13]] under this section." It is this second part of Section 151(d)(5)(B) that, in conjunction with Section 873(b)(3), preserved a nonresident alien's "entitlement" to a personal exemption deduction, and that is because, as noted above, Section 873(b) itself grants entitlement to a personal exemption deduction.

(alterations and footnote added; omissions in original). Plaintiff asserts that "this dual-function[14] interpretation of Section 151(d)(5)(B) is consistent with the provision's Legislative History." (footnote added). Additionally, at oral argument, plaintiff's counsel of record argued that his dual-function interpretation of § 151(d)(5)(B) "not only address[es] the many cases – head of household, child tax credit – where the personal exemption allowed – allowability is relevant, but also the situation – and I think this [26 U.S.C. § 873(b)(3)] is the only one – where the entitlement to the deduction proactively comes into play." (alterations added).

Plaintiff also argues that "Congress modified the Internal Revenue Code only in certain instances where special wording was required to preserve the personal exemption, but relied on 26 U.S.C. § 151(d)(5)(B) in all other cases where this specific attention was not required," citing to 26 U.S.C. § 642(b)(2)(C)(i), which provides that a qualified disability trust "shall be allowed a deduction equal to the exemption amount under section 151(d)." 26 U.S.C. § 642(b)(2)(C)(i) (2018).[15] According to plaintiff, because

---

[13] As noted above, plaintiff's quotation is missing a comma. The statute at 26 U.S.C. § 151(d)(5)(B), following plaintiff's omission, states: "a taxpayer is entitled to a deduction, under this section."

[14] According to plaintiff's interpretation, the second function of 26 U.S.C. § 151(d)(5)(B) allows taxpayers to "ignore or not take into account the reduction to zero or other provisions of the title that entitle the taxpayer to a deduction," even when determining the amount of the deduction.

[15] The statute at 26 U.S.C. § 642(b)(2)(C) provides in full:

Congress did not intend to end the entitlement for a disability trusts provided by 26 U.S.C. § 642(b)(2)(C), the Tax Cuts and Jobs Act amended 26 U.S.C. § 642(b)(2)(C) to include § 642(b)(2)(C)(iii), which provides "[i]n the case of any taxable year in which the exemption amount under section 151(d) is zero, clause (i) shall be applied by substituting '$4,150' for 'the exemption amount under section 151(d).'" (alteration added). Plaintiff argues that "Congress specifically needed to amend 26 U.S.C. § 642(b)(2)(C) to continue the allowance of a deduction for qualified disability trusts under 26 U.S.C. § 642(b)(2)(C)(i) because that provision used the term 'exemption amount,'" whereas "Congress did not need to amend 26 U.S.C. § 873(b)(3) to continue the allowance of a personal exemption deduction for nonresident aliens because of the 'savings clause' it enacted in 26 U.S.C. § 151(d)(5)(B)."[16]

In defendant's cross-motion for summary judgment, defendant argues that 26 U.S.C. § 873(a) provides a general rule against deductions for nonresident aliens, albeit

---

**(C) Disability trusts.**
**(i) In general.** A qualified disability trust shall be allowed a deduction equal to the exemption amount under section 151(d), determined—
**(I)** by treating such trust as an individual described in section 68(b)(1)(C), and
**(II)** by applying section 67(e) (without the reference to section 642(b)) for purposes of determining the adjusted gross income of the trust.
**(ii) Qualified disability trust.** For purposes of clause (i), the term "qualified disability trust" means any trust if—
**(I)** such trust is a disability trust described in subsection (c)(2)(B)(iv) of section 1917 of the Social Security Act (42 U.S.C. [§] 1396p), and
**(II)** all of the beneficiaries of the trust as of the close of the taxable year are determined by the Commissioner of Social Security to have been disabled (within the meaning of section 1614(a)(3) of the Social Security Act, 42 U.S.C. [§] 1382c(a)(3)) for some portion of such year.
A trust shall not fail to meet the requirements of subclause (II) merely because the corpus of the trust may revert to a person who is not so disabled after the trust ceases to have any beneficiary who is so disabled.
**(iii) Years when personal exemption amount is zero.**
**(I) In general.** In the case of any taxable year in which the exemption amount under section 151(d) is zero, clause (i) shall be applied by substituting "$4,150" for "the exemption amount under section 151(d)."
**(II) Inflation adjustment.** In the case of any taxable year beginning in a calendar year after 2018, the $4,150 amount in subparagraph (A) shall be increased in the same manner as provided in section 6334(d)(4)(C).

26 U.S.C. § 642(b)(2)(C) (2018) (alterations added; emphasis in original).

[16] Only plaintiff characterizes 26 U.S.C. § 151(d)(5)(B) as a "savings clause," as it pertains to 26 U.S.C. § 873(b)(3).

acknowledging that certain specific exceptions are allowed by 26 U.S.C. § 873(b). Defendant asserts that "[i]t would be highly unusual for § 873(a) to provide a general rule limiting the deductions available to nonresident aliens, and then for § 873(b) to provide a second general rule granting nonresident aliens entitlement to different deductions." (alteration added).

Defendant further argues that the plain language of 26 U.S.C. §§ 2, 24, 36B, and 642 demonstrates that 26 U.S.C. § 151(d)(5)(B) does not apply to 26 U.S.C. § 873(b)(3). Defendant states that "[t]he text of § 873(b)(3) unequivocally states that the personal exemption deduction for nonresident aliens is 'allowed by section 151,'" and "points nonresident aliens back to § 151 as the source of their entitlement to a personal exemption deduction." (alteration added). Defendant argues that "this plain language interpretation" of 26 U.S.C. § 873(b)(3) "is confirmed by [26 U.S.C.] § 874, which states that the personal exemption deduction for nonresident aliens specifically is 'under section 151.'" (alteration added).[17]

Defendant further argues that 26 U.S.C. § 151(d)(5)(B) only "applies when there is a Code section that asks whether someone would be eligible for a deduction under § 151, and then grants some other tax status or benefit on the basis of that eligibility." By way of example, defendant points to 26 U.S.C. § 2(b)(1),[18] which defines the head of household

---

[17] The full text of 26 U.S.C. § 874 provides in full:

**§ 874. Allowance of deductions and credits**
**(a) Return prerequisite to allowance.** A nonresident alien individual shall receive the benefit of the deductions and credits allowed to him in this subtitle only by filing or causing to be filed with the Secretary a true and accurate return, in the manner prescribed in subtitle F (sec. 6001 and following, relating to procedure and administration), including therein all the information which the Secretary may deem necessary for the calculation of such deductions and credits. This subsection shall not be construed to deny the credits provided by sections 31 and 33 for tax withheld at source or the credit provided by section 34 for certain uses of gasoline and special fuels.
**(b) Tax withheld at source.** The benefit of the deduction for exemptions under section 151 may, in the discretion of the Secretary, and under regulations prescribed by the Secretary, be received by a nonresident alien individual entitled thereto, by filing a claim therefor with the withholding agent.
**(c) Foreign tax credit.** Except as provided in section 906, a nonresident alien individual shall not be allowed the credits against the tax for taxes of foreign countries and possessions of the United States allowed by section 901.

26 U.S.C. § 874 (2018) (emphasis in original).

[18] The pertinent language of 26 U.S.C. § 2(b)(1) provides:

tax status. According to defendant, to qualify for the head of household tax status, a taxpayer must be "'entitled to a deduction' under § 151." The defendant further argues that because of 26 U.S.C. § 151(d)(5)(B), "an individual is still 'entitled to' a personal exemption deduction" despite the exemption amount has been reduced to zero. According to defendant, because 26 U.S.C. § 2 only referenced whether the taxpayer was entitled to a personal exemption deduction under 26 U.S.C. § 151 to determine whether he or she is eligible for the tax status provided by 26 U.S.C. § 2 under § 151(d)(5)(B) "the taxpayer will be considered as being allowed the personal exemption deduction notwithstanding that the amount of the personal exemption deduction is zero."

Defendant further argues that 26 U.S.C. § 151(d)(5)(B) also applies to 26 U.S.C. § 24. The statute at 26 U.S.C. § 24 provides that "[t]here shall be allowed as a credit against the tax imposed by this chapter for the taxable year with respect to each qualifying child of the taxpayer for which the taxpayer is allowed a deduction under section 151 an amount equal to $1,000." 26 U.S.C. § 24(a) (2018) (alteration added). Defendant argues that, because of 26 U.S.C. § 151(d)(5)(B), "a personal exemption deduction is still considered 'allowed'" despite that the exemption amount having been reduced to zero. Thus, because the tax benefit granted by 26 U.S.C. § 24 is only conditioned on whether the taxpayer was allowed a deduction under § 151, then, under § 151(d)(5)(B), defendant

---

**(1) In general.** For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, is not a surviving spouse (as defined in subsection (a)), and either—

**(A)** maintains as his home a household which constitutes for more than one-half of such taxable year the principal place of abode, as a member of such household, of—

**(i)** a qualifying child of the individual (as defined in section 152(c), determined without regard to section 152(e)), but not if such child—

**(I)** is married at the close of the taxpayer's taxable year, and

**(II)** is not a dependent of such individual by reason of section 152(b)(2) or 152(b)(3), or both, or

**(ii)** any other person who is a dependent of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or

**(B)** maintains a household which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such father or mother under section 151.

For purposes of this paragraph, an individual shall be considered as maintaining a household only if over half of the cost of maintaining the household during the taxable year is furnished by such individual.

26 U.S.C. § 2(b)(1) (2018) (emphasis in original).

argues, "the taxpayer will be considered as being allowed the personal exemption deduction notwithstanding that the amount of the personal exemption deduction is zero."

Defendant contends that 26 U.S.C. § 151(d)(5)(B) does not apply to 26 U.S.C. § 873(b), as it does to 26 U.S.C. §§ 2 and 24, because 26 U.S.C. § 873(b) "does not itself grant entitlement to any deduction." Defendant argues that 26 U.S.C. § 873(b) does not "ask whether a nonresident alien would qualify for a personal exemption deduction under § 151 and then grant them an equivalent deduction if the answer is 'yes.'" Instead, defendant suggests that "[t]he text of § 873(b)(3) unequivocally states that the personal exemption deduction for nonresident aliens is 'allowed by section 151.'"[19] (alteration added).

Defendant also contrasts the amendments made by the Tax Cuts and Jobs Act to 26 U.S.C. § 642(b) to the absence of amendments made to 26 U.S.C. § 873(b)(3) by the same statute. Both 26 U.S.C. §§ 642(b)(2)(C)(i) and 873(b)(3) direct taxpayers to 26 U.S.C. § 151 and allow qualified taxpayers to claim the deduction or deductions therein. The statute at 26 U.S.C. § 642(b)(2)(C)(i) provides that "[a] qualified disability trust shall be allowed a deduction equal to the exemption amount under section 151(d)," and, as noted above, 26 U.S.C. § 873(b)(3) allows nonresident aliens to claim a "deduction for personal exemptions allowed by section 151." (alteration added). Defendant notes, however, that despite any similarities, the Tax Cuts and Jobs Act only amended 26 U.S.C. § 642(b), adding 26 U.S.C. § 642(b)(2)(C)(iii), and did not amend 26 U.S.C. § 873. The addition at 26 U.S.C. § 642(b)(2)(C)(iii) specifically provides that in any taxable year when the exemption amount under section 151(d) is zero, 26 U.S.C. § 642(b)(2)(C)(i) shall be applied by substituting "'$4,150'" for "'the exemption amount under section 151(d),'" whereas 26 U.S.C. § 873(b)(3) entitled nonresident aliens only to "[t]he 'deduction for personal exemptions allowed by section 151.'" (alteration added). Thus, defendant concludes, "a taxpayer's entitlement to a personal exemption deduction and that deduction's value are separate concepts."

Based on the court's reading of the words of the statutes and considering the arguments offered by the parties, the court's analysis follows. Pursuant to the statute at 26 U.S.C. § 873(b)(3), nonresident alien taxpayers are allowed to take, "[t]he deduction for personal exemptions allowed by section 151, except that only one exemption shall be allowed under section 151 unless the taxpayer is a resident of a contiguous country or is a national of the United States." 26 U.S.C. § 873(b)(3) (alteration added). The statute at 26 U.S.C. § 151(a) provides that the personal exemptions provided in subparagraphs (b) and (c) "shall be allowed as deductions in computing taxable income." 26 U.S.C. § 151(a). The statutes at 26 U.S.C. §§ 151(b) and 151(c) provide the three types of personal

---

[19] The court notes that text of 26 U.S.C. § 873(b)(3) does not "unequivocally state[] that the personal exemption deduction for nonresident aliens is 'allowed by section 151.'" (alteration added). Instead, 26 U.S.C. § 873(b)(3) exempts "[t]he deduction for personal exemptions allowed by section 151" from the general rule disallowing certain deductions to nonresident alien taxpayers found in 26 U.S.C. § 873(a). (alteration added).

exemptions for which a taxpayer may qualify under this section. The statute at 26 U.S.C. § 151(b) provides in full:

> **(b) Taxpayer and spouse.** An exemption of the exemption amount for the taxpayer; and an additional exemption of the exemption amount for the spouse of the taxpayer if a joint return is not made by the taxpayer and his spouse, and if the spouse, for the calendar year in which the taxable year of the taxpayer begins, has no gross income and is not the dependent of another taxpayer.

26 U.S.C. § 151(b) (emphasis in original). Subsection 151(c) provides "[a]n exemption of the exemption amount for each individual who is a dependent (as defined in section 152) of the taxpayer for the taxable year." 26 U.S.C. § 151(c) (alteration added). The "exemption amount" for which 26 U.S.C. §§ 151(b) and 151(c) provide exemptions, is defined at 26 U.S.C. § 151(d), which is quoted in full above. The determination of whether a taxpayer is allowed an exemption and the determination of the amount of that exemption are separate processes under the Tax Code. While the statute at 26 U.S.C. § 151(a) allows a taxpayer to claim personal exemptions under 26 U.S.C. §§ 151(b) and 151(c), the statute at 26 U.S.C. §§ 151(b) and 151(c) do not themselves provide the amount of the exemption. Instead, both subsections allow "an exemption of the exemption amount," which is further discussed and determined in 26 U.S.C. § 151(d), titled "Exemption amount." When determining the amount of the exemption in plaintiff's case, 26 U.S.C. § 151(d)(4) provides a formula for calculating the inflation adjustment to the exemption amount "in the case of any taxable year beginning in a calendar year after 1989," but that formula's application is qualified by 26 U.S.C. § 151(d)(5), added in the statute at 26 U.S.C. § 151(d)(5)(A), which provides:

> **(5) Special rules for taxable years 2018 through 2025.** In the case of a taxable year beginning after December 31, 2017, and before January 1, 2026–
> **(A) Exemption amount.** The term "exemption amount" means zero.
> **(B) References.** For purposes of any other provision of this title, the reduction of the exemption amount to zero under subparagraph (A) shall not be taken into account in determining whether a deduction is allowed or allowable, or whether a taxpayer is entitled to a deduction, under this section.

26 U.S.C. § 151(d)(5) (emphasis in original).

In sum, the plain language of 26 U.S.C. § 151(d)(5) establishes two separate concepts: (1) the process of determining whether an individual's deduction is "allowed," "allowable," or is "entitled to" and (2) the actual exemption amount. The statute at 26 U.S.C. § 151(d)(5)(B) provides that the process of determining whether a taxpayer should be allowed a personal exemption deduction or whether a taxpayer is entitled to a personal exemption deduction must be completed without accounting for the reduction of the dollar

amount of the exemption amount to zero.[20] The statute at 26 U.S.C. § 151(d)(5)(A) clearly defines the term "exemption amount" as "zero" for the tax years 2018 through 2025, as applied to plaintiff's case.

Although using differing approaches, both parties agree that plaintiff was entitled to a deduction provided by 26 U.S.C. § 873(b)(3). Plaintiff argues that "[i]f Section 873(b)(3) did not exist, nonresident aliens would not be able to claim a deduction for a personal exemption, so clearly it is Section 873(b)(3) that affirmatively confers this right." Defendant states that, "[a]t most, when applied to § 873(b)(3), § 151(b)(5)(B) clarifies that nonresident aliens are still considered 'entitled to' a deduction under § 151 even though that deduction is worth zero." (alterations added). Therefore, distinguishing which statutory provision establishes the entitlement, 26 U.S.C. § 873, as the plaintiff claims, or 26 U.S.C. § 151, as the defendant claims, does not reach or resolve the issue of the dollar amount the plaintiff may deduct. The statute at 26 U.S.C. § 873(b)(3) does allow the plaintiff a personal deduction, pursuant to § 151, of one exemption amount. As for determining the amount of the deduction which plaintiff can claim, plaintiff's "dual-function" interpretation of 26 U.S.C. § 151(d)(5)(B) misunderstands the purpose of the phrase "or whether a taxpayer is entitled to a deduction," in 26 U.S.C. § 151(d)(5), which is offset by commas in the statute. As noted repeatedly above, the whole sentence reads, "[f]or purposes of any other provision of this title, the reduction of the exemption amount to zero under subparagraph (A) shall not be taken into account in determining whether a deduction is allowed or allowable, or whether a taxpayer is entitled to a deduction, under this section." 26 U.S.C. § 151(d)(5)(B) (alteration added).

The phrase "or whether a taxpayer is entitled to a deduction" in 26 U.S.C. § 151(d)(5)(B) is meant to provide an alternative option to "allowed" or "allowable" in the statute. See Conjunctive/Disjunctive Canon, BLACK'S LAW DICTIONARY (11th ed. 2019) (stating that "in a legal instrument, *and* joins a conjunctive list to combine items, while *or* joins a disjunctive list to create alternatives") (emphasis in original). The common, modern use of "or whether" is to ask a question with a binary answer.[21] Thus, the statute at 26 U.S.C. § 151(d)(5)(B) simply means that, when determining whether a deduction under

---

[20] Defendant argues with respect to temporarily changing the exemption amount to zero, as opposed to changing other provisions that reference 26 U.S.C. § 151, preserved "the definitions in many other Code provisions that rely on the concept of entitlement to personal exemption deductions," and "[s]triking § 151 altogether would have required substantial revisions to other parts of the Code that would then have to be undone once the suspension of the personal exemption deduction sunsets at the end of 2025." (alteration added).

[21] Whether is "used as a function word usually with correlative *or* or with *or whether* to indicate an indirect question involving stated or implied alternatives." https://www.merriam-webster.com/dictionary/whether (last visited Jan. 25, 2024) (emphasis in original); see also Brower v. Evans, 257 F.3d 1058, 1066 (9th Cir. 2001) (stating "[t]he common meaning of 'whether' is 'whichever of the two'") (citing Merriam Webster's Collegiate Dictionary (10th ed. 1993)).

26 U.S.C. § 151 is allowed (or not) or allowable (or not) or whether a taxpayer is entitled to a deduction (or not), the reduction of the exemption amount to zero must not be taken into account and refines further statutory interpretation consistent with 26 U.S.C. § 151(d)(5)(A). This interpretation of 26 U.S.C. § 151(d)(5)(B) is consistent with the statute's place in the overall statutory scheme because the provisions of Title 26 that reference 26 U.S.C. § 151 use either "allowed," "allowable," or "entitled to." For example, the statutes at 26 U.S.C. §§ 2, 24, and 36B use "entitled to," "allowed," and "allowable," respectively.

Plaintiff's interpretation of the relevant statutes presents a number of difficulties under a statutory interpretation analysis. By removing the last comma of the provision at 26 U.S.C. § 151(d)(5)(B), plaintiff changes the function of "under this section" from modifying the gerund noun "determining" to modifying the prepositional phrase "to a deduction." The statute states: "For purposes of any other provision of this title, the reduction of the exemption amount to zero under subparagraph (A) shall not be taken into account in determining whether a deduction is allowed or allowable, or whether a taxpayer is entitled to a deduction, under this section." 26 U.S.C. § 151(d)(5)(B).

Plaintiff's "dual-function" theory fails once the missing comma plaintiff has removed is returned to the statute. Because the example provided in the Conference Report's footnote is fully explained by the "first part" of plaintiff's construction, the "second part" of the construction constitutes an expansion of 26 U.S.C. § 151(d)(5)(B), unsupported either by statute or legislative history, and, further, the "second part" of plaintiff's construction disregards the statute at 26 U.S.C. § 151(d)(5)(A). Both the Conference Report's footnote and the first part of plaintiff's interpretation explain how 26 U.S.C. § 151(d)(5) allows qualifying taxpayers to claim a tax benefit specified in 26 U.S.C. § 24. However, the second part of plaintiff's interpretation, but not part of the footnote, directs that 26 U.S.C. § 151(d)(5)(B), in conjunction with 26 U.S.C. § 873(b)(3), allows taxpayers to claim the dollar exemption amount specified by 26 U.S.C. § 151(d)(4), despite the reduction of that amount in 26 U.S.C. § 151(d)(5)(A) to zero. Third, the Conference Report, in trying to reconcile the bill that became the Tax Cuts and Jobs Act, adopted a Senate amendment that, without qualification, "suspend[ed] the deduction for personal exemptions." H.R. Rep. No. 115-466 at 204 (alteration added).

In addition, the court notes that plaintiff gives no indication of how he determined the amount of the exemption claimed on his 2018 amended tax return. Prior to the Tax Cuts and Jobs Act, taxpayers would have determined the exemption amount by referencing the inflation adjustment formula provided by 26 U.S.C. § 151(d)(4). Applying that formula prior to 2018, the Internal Revenue Service calculated the tax year 2018 exemption amount to be $4,150.00, publishing their determination in Revenue Procedure 2017-58. See Rev. Proc. 2017-58, 2017-45 I.R.B. 489. Following enactment of the Tax Cuts and Jobs Act, the Internal Revenue Service published Revenue Procedure 2018-18, which modified and superseded Revenue Procedure 2017-58 and stated that the exemption amount for 2018 was zero. See Rev. Proc. 2018-18, 2018-10 I.R.B. 392. More importantly, Congress explicitly directed, in 26 U.S.C. § 151(d)(4), that the inflation adjustment formula must be used, "[e]xcept as provided by paragraph (5)." (alteration

added). Paragraph (5)(A), of 26 U.S.C. § 151(d), expressly defines the 2018 exemption amount as zero, and 26 U.S.C. § 151(d)(5)(B) has no bearing on the amount of any deduction or exemption. Thus, the only authority that supports plaintiff's calculation of the exemption amount, 26 U.S.C. § 151(d)(4), was suspended for tax year 2018 by 26 U.S.C. § 151(d)(5), the tax year at issue in plaintiff's case.

Plaintiff "believe[s] the purpose of 151(d)(5)(B) is to get around the zero in those parts of the Code where we need to get around zero to preserve the integrity of the provisions, i.e., head of household, qualifying relative, child tax credit, and, we argue, 873(b)(3)." (alteration added). Plaintiff is correct only to the extent required to determine whether a deduction under 26 U.S.C. § 151 is "allowed," "allowable," or, if also considered synonymous, "entitled to" a deduction under section 151. Under the applicable statutes, taxpayers can be entitled to a deduction, but the proper calculation of the applicable amount is reduced and valued at zero dollars for tax year 2018. Therefore, in plaintiff's case the deduction is valued at zero dollars. Thus, 26 U.S.C. §§ 151(d)(5)(A) and 151(d)(5)(B) "are capable of co-existence," and "absent a clearly expressed congressional intention to the contrary," each subsection must be given its own effect. See Morton v. Mancari, 417 U.S. at 551.

This court's analysis of the statutory language of 26 U.S.C. § 873 and 26 U.S.C. § 151 is consistent with the purpose of the Tax Code. See King v. Burwell, 576 U.S. at 486. Prior to the Tax Cuts and Jobs Act, the legislative purpose of 26 U.S.C. § 151 was to allow taxpayers to claim a deduction for personal exemptions. Additionally, prior to the Tax Cuts and Jobs Act, the legislative purpose of 26 U.S.C. § 873(a) was to disallow deductions for nonresident alien individuals, unless their income related to the conduct of a trade or business, i.e., no personal exemptions. Moreover, prior to the Tax Cuts and Jobs Act, the legislative purpose of 26 U.S.C. § 873(b)(3) was to provide an exception to the 26 U.S.C. § 873(a) disallowance such that nonresident alien taxpayers could claim the deduction provided by 26 U.S.C. § 151.

Plaintiff's argument oddly asserts that Congress, through the Tax Cuts and Jobs Act, disallowed the deduction provided by 26 U.S.C. § 151 for all taxpayers, but maintained the entitlement for nonresident alien taxpayers, even though Congress did not amend either the general disallowance in 26 U.S.C. § 873(a) or the exception to the general disallowance in 26 U.S.C. § 873(b). Had Congress desired 26 U.S.C. §§ 151 and 873 to have such a discriminating effect in favor of nonresident alien taxpayers over United States citizen and resident alien taxpayers, then Congress could have added to 26 U.S.C. § 873(b)(3) language like that of the addition the Tax Cuts and Jobs Act made to 26 U.S.C. § 642(b)(2)(C)(iii). Congress added 26 U.S.C. § 642(b)(2)(C)(iii) so that disability trusts could continue to receive the benefit provided by § 151 during the "[y]ears when [the] personal exemption amount is zero." (alterations added). Congress chose not to use such language in 26 U.S.C. § 873(b)(3), and this court cannot infer a congressional intent to discriminate against United States citizen and resident alien taxpayers in favor of nonresident alien taxpayers. See Comm'r v. Wodehouse, 337 U.S. 369, 388-91 (1949) (holding that the purpose to discriminate in favor of nonresident alien taxpayers against United States citizen and resident alien taxpayers cannot be implied).

Applying the facts of plaintiff's case to the existing, relevant provisions of the Tax Code, nonresident aliens, such as plaintiff, must look to 26 U.S.C. § 873 to determine what deductions they may claim when computing their taxable income. The statute at 26 U.S.C. § 873(a) generally prohibits nonresident aliens from claiming any deduction that is not "connected with income which is effectively connected with the conduct of a trade or business within the United States." 26 U.S.C. § 873(a). The statute at 26 U.S.C. § 873(b)(3), however, provides certain exceptions to this rule, including allowing nonresident aliens such as plaintiff to claim a deduction for one exemption allowed by 26 U.S.C. § 151, but it does not provide a tax benefit that is independent of, or unique to, the deduction allowed plaintiff by 26 U.S.C. § 151.

Because 26 U.S.C. § 873(b)(3) provides only the deduction allowed by 26 U.S.C. § 151, 26 U.S.C. § 873(b)(3) stands in contrast to each of the other, but not relevant, provisions plaintiff cites as "provisions in the Code that remain in effect and whose efficacy was preserved by 26 U.S.C. § 151(d)(5)(B)." Plaintiff argues a parallel between the application of 26 U.S.C. § 151(d)(5)(B) to 26 U.S.C. § 873(b)(3) and the application of 26 U.S.C. § 151(d)(5)(B) to 26 U.S.C. §§ 2(b)(1)(B), 24(a), 24(h)(4), and 36B. Each of these sections, however, authorizes a tax benefit or status different from the personal deduction authorized by 26 U.S.C. § 151 but based on a taxpayer's entitlement to a deduction under 26 U.S.C. § 151. A closer parallel, prior to the Tax Cuts and Jobs Act, existed between the statutes at 26 U.S.C. §§ 642(b)(2)(C) & 873(b)(3) because these two sections each referenced 26 U.S.C. § 151 to determine whether a deduction was allowed and to determine the value of that deduction. While Congress amended 26 U.S.C. § 642(b)(2)(C) to maintain a valuable deduction for disability trusts, Congress chose not to do the same for nonresident alien taxpayers. Instead, the plain language of 26 U.S.C. § 873(b)(3) provides the only deduction allowed this plaintiff by 873(b)(3) is that "allowed by 151," namely, one deduction for an exemption in the amount of zero dollars.

Therefore, plaintiff, Cecil Bell, was entitled to one deduction for a personal exemption allowed by 26 U.S.C. § 151, pursuant to 26 U.S.C. § 873(b)(3). Plaintiff's entitlement to one deduction was not altered by the fact that the Tax Cuts and Jobs Act reduced the exemption amount to zero dollars, pursuant to 26 U.S.C. § 151(d)(5)(B). That deduction was equal to an exemption amount, pursuant to 26 U.S.C. § 151(b), and the exemption amount to be calculated for tax purposes for the 2018 tax year was zero dollars, pursuant to 26 U.S.C. § 151(d)(5)(A). Therefore, plaintiff is not entitled to the refund of $415.00 plaintiff claimed in his complaint.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED**, and defendant's cross-motion for summary judgment is **GRANTED**. Plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED**.

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**